UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIANA DANIELLE HEIKELL,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Defendant. | Case No. C14-1983-RSL-BAT<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Briana Danielle Heikell seeks review of the denial of her Disability Insurance Benefits application. She contends the administrative law judge ("ALJ") erred in assessing certain medical opinions, and in assessing her residual functional capacity ("RFC"). Dkt. 11 at 1-2. As discussed below, the Court recommends **AFFIRMING** the Commissioner's final decision **DISMISSING** the case with prejudice.

## BACKGROUND

Ms. Heikell is currently 28 years old, has a college degree, and has worked as a library assistant, daycare provider, nanny, and waitress.[1] On August 22, 2012, she protectively applied for benefits, alleging disability as of July 1, 2011. Tr. 172-78, 186. Her application was denied

---

[1] Tr. 186, 191, 283.

REPORT AND RECOMMENDATION - 1

initially and on reconsideration. Tr. 105-07, 112-16. The ALJ conducted a hearing on August 8, 2013 (Tr. 37-79), and subsequently found Ms. Heikell not disabled. Tr. 16-32. As the Appeals Council denied Ms. Heikell's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [2] the ALJ found:

**Step one:** Ms. Heikell did not engage in substantial gainful activity since the alleged onset date.

**Step two:** Ms. Heikell's depressive disorder, generalized anxiety disorder, and borderline personality disorder are severe.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**RFC:** Ms. Heikell has the RFC to perform a full range of work at all exertional levels, but is limited to unskilled, repetitive, and routine work, with no public contact. She can have occasional contact with supervisors and co-workers. She would be off-task at work 7% of the time, and absent from work one time every three months.

**Step four:** Ms. Heikell cannot perform her past work.

**Step five:** As there are other jobs that exist in significant numbers in the national economy that Ms. Heikell can perform, she is not disabled.

Tr. 16-32.

## DISCUSSION

**A.    Medical Opinions**

Ms. Heikell challenges the ALJ's assessment of opinions provided by examining psychiatrist Kathleen Andersen, M.D.; treating psychiatric nurse Kitty Grupp, Ph.D., ARNP; and treating psychologist Michelle Brown, Psy.D., LMHC.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

1.     *Dr. Andersen*

Dr. Andersen evaluated Ms. Heikell in October 2012.  Tr. 282-88.  After Ms. Heikell's benefits application had been denied at the initial and reconsideration levels, Ms. Heikell's attorney scheduled another evaluation with Ms. Andersen in July 2013, and provided her with, *inter alia*, a copy of the State agency reviewing psychologist's opinion, which discusses her October 2012 opinion.  Tr. 337-47 (referencing Tr. 92-104).

The ALJ summarized Dr. Andersen's two opinions at length.  Tr. 23-25.  The ALJ gave little weight to Dr. Andersen's first opinion, finding it inconsistent with Ms. Heikell's mental status examination findings as well as with the daily activities Ms. Heikell reported to other providers.  Tr. 24.  The ALJ also found that Dr. Andersen's October 2012 Global Assessment of Functioning ("GAF") score of 50 is not consistent with Ms. Heikell's ability to travel to the Oregon coast.  *Id*.  Lastly, the ALJ found that Dr. Andersen's opinion "relies heavily" on Ms. Heikell's self-reporting, which the ALJ lacked credibility.  *Id*.

The ALJ found that Dr. Andersen again relied on Ms. Heikell's self-reporting in rendering her second opinion, and also noted that Dr. Andersen was aware of Ms. Heikell's substance use but did not explain how this affected her functioning.  Tr. 25.  The ALJ also found that Dr. Andersen's opinion was inconsistent with contemporaneous therapy notes, and inconsistent with Dr. Andersen's own mental status examination findings.  *Id*.

Ms. Heikell argues that even if Dr. Andersen relied on her self-report, her opinions should not have been discounted on that basis, under *Ryan v. Commissioner of Social Security Administration*.  Dkt. 11 at 5 (citing 528 F.3d 1194, 1199-1200 (9th Cir. 2008)).  As the Commissioner points out, however, *Ryan* explains that where a doctor does not question the credibility of a claimant's reports, *and supports the opinion with his or her own observations*, a

REPORT AND RECOMMENDATION - 3

1   claimant whose testimony lacks credibility does not undermine the doctor's opinion.  Dkt. 17 at

2   7-8.  In this situation, Dr. Andersen's opinions reflect reliance on Ms. Heikell's self-reports

3   without independent corroboration, and *Ryan* is therefore inapposite.  *See* Tr. 287, 346-47.

4         The ALJ also noted that Dr. Andersen's opinions documented Ms. Heikell's substance

5   use — specifically marijuana use and binge drinking, some of which had not been disclosed

6   during Dr. Andersen's first evaluation — but did not indicate the impact of that use on Ms.

7   Heikell's functioning.  Tr. 25.  This is a specific, legitimate reason to discount Dr. Andersen's

8   opinions.  *See* 20 C.F.R. § 404.1527(d)(6) (The extent to which a doctor is familiar with other

9   information in a claimant's case record is a relevant factor in deciding the weight to give to a

10  medical opinion.).

11        In short, as the ALJ gave at least one valid reason supported by substantial evidence to

12  the ALJ's determinations regarding Dr. Anderson's opinions should be affirmed.

13        2.     *Dr. Grupp*

14        Dr. Grupp treated Ms. Heikell twice, in May and June 2013.  Tr. 367-68.  Dr. Grupp

15  prescribed medication, and opined that Ms. Heikell was "currently unable to work, and needs

16  help in order to stabilize." Tr. 368.  Dr. Grupp prescribed medication and recommended therapy,

17  but Ms. Heikell stopped treatment with Dr. Grupp thereafter.  Tr. 368 (last treatment note,

18  indicating that Ms. Heikell would get in touch once she had started medication).

19        The ALJ first discounted Dr. Grupp's opinion as inconsistent with her own findings and

20  instead reliant on Ms. Heikell's non-credible self-reports.  Tr. 27-28.  Second, the ALJ found Dr.

21  Grupp's opinion was inconsistent with other contemporaneous evidence, showing that Ms.

22  Heikell planned a trip to the Oregon coast and discussed "goal-oriented plans" with a therapist.

23  Tr. 27-28.

The content of Dr. Grupp's treatment notes consist nearly entirely of Ms. Heikell's self-reported symptoms. Tr. 367-38. The ALJ discounted the credibility of Ms. Heikell's self-report, and she does not challenge that finding. Tr. 21-23. Therefore, Dr. Grupp's reliance on non-credible self-reporting is a valid reason to discount her opinion. Even if the ALJ insufficiently explained why planning a trip or discussing the future with a psychologist was inconsistent with Ms. Grupp's opinion, the ALJ's determination should be upheld because the ALJ's first reason is valid and supported by substantial evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

   3. *Dr. Brown*

Dr. Brown completed a variety of documents related to Ms. Heikell's benefits application, describing Ms. Heikell's symptoms and limitations. Tr. 348, 365-66, 369-73. The ALJ summarized Dr. Brown's statements, but gave very little weight to them, finding them unsupported by and inconsistent with her treatment notes. Tr. 28-29. The ALJ noted that Ms. Heikell did not begin treatment with Dr. Brown until after she applied for benefits, and that Dr. Brown's treatment notes reference discussion of Ms. Heikell's benefits application, specifically the need for "clinical documentation" of Ms. Heikell's diagnoses. Tr. 28-29 (citing Tr. 355, 360).

The ALJ's reasons to discount Dr. Brown's statements are specific and legitimate. The ALJ noted that although Dr. Brown described the results of two tests in her July 2013 letter and August 2013 declaration, her treatment notes of record do not document that the testing ever took

REPORT AND RECOMMENDATION - 5

1  place.  Tr. 28 (referencing Tr. 348, 355-64, 370).  Ms. Heikell argues that there is no requirement
2  that test results be produced (Dkt. 11 at 12), which may be true, but the fact that Dr. Brown's
3  treatment notes do not reflect the administration of tests described elsewhere nonetheless does
4  present an inconsistency that undermines the value of Dr. Brown's opinion.  *See* 20 C.F.R. §
5  404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion,
6  particularly medical signs and laboratory findings, the more weight we will give that opinion.").
7  The ALJ did not err in finding that lack of corroborating evidence undermines the reliability of
8  Dr. Brown's opinion.  *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th
9  Cir. 2004) (finding that a lack of "supportive objective evidence" is a valid reason to discount a
10 treating physician's opinion).
11       Furthermore, the ALJ noted that although Dr. Brown opined that Ms. Heikell had several
12 "marked" or "extreme" limitations, including in her ability to travel to unfamiliar places and
13 ability to set realistic goals (Tr. 356), Dr. Brown's treatment notes reveal that Ms. Heikell
14 reported planning a vacation to celebrate her anniversary, and that she discussed her long-term
15 goals related to "job, house, kids."  Tr. 358.  The ALJ reasonably found these notes to be
16 inconsistent with Dr. Brown's opinion.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.
17 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing
18 from the evidence.").
19       The ALJ's final reason with regard to discounting Dr. Brown's opinions relates to
20 evidence that he interpreted as demonstrating Dr. Brown's "advocacy in furtherance of the
21 claimant's disability application, rather than as an objective source of evidence."  Tr. 29.  Ms.
22 Heikell refers to the ALJ's inferences as "unreasonable suspicions" regarding "reasonable
23 communication between a treating provider and her patient."  Dkt. 11 at 13-14.  Ms. Heikell

REPORT AND RECOMMENDATION - 6

urges the Court to avoid assuming "'that doctors routinely lie in order to help their patients collect disability benefits.'"  Dkt. 11 at 14 (quoting *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)).  But the ALJ did not find or speculate that Dr. Brown lied.  The ALJ found that the multiple references to Ms. Heikell's benefits application (Tr. 355, 357, 358, 359, 360) in Dr. Brown's ten pages of treatment notes supported a view that Dr. Brown focused on advocating for Ms. Heikell's application.  Tr. 28-29.  Specifically, Dr. Brown discussed how to document Ms. Heikell's diagnoses, and provided education regarding the disability process.  Tr. 360.

The ALJ's interpretation that Dr. Brown had become an advocate for Ms. Heikell's benefits application may not be the only reasonable interpretation of the evidence, but Ms. Heikell has not shown why this interpretation is unreasonable and therefore erroneous.  *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  Because an ALJ is entitled to discount an opinion rendered by a provider in an advocacy role, the ALJ did not err in discounting Dr. Brown's opinions.  *See Matney ex.rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (affirming an ALJ's finding that a doctor's opinion was "entitled to less weight because he had agreed to become an advocate and assist in presenting a meaningful petition for Social Security benefits").

B.   **RFC Assessment**

Ms. Heikell contends that the ALJ's RFC assessment is flawed in a number of ways.  First, she argues that the ALJ's RFC assessment fails to account for the limitations identified in the opinions discussed in the previous section.  Dkt. 11 at 14-15.  The ALJ did not err in discounting those opinions, as explained *supra*, and thus did not err in failing to include the limitations referenced in those opinions.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-

76 (9th Cir. 2008). Whether those discounted opinions were consistent with other evidence is not relevant, because, as explained above, the ALJ provided legally sufficient reasons to discount those opinions. Dkt. 11 at 15 (discussing evidence that Ms. Heikell argues is consistent with the discounted opinions).

Ms. Heikell also grafts a lay evidence challenge on to her challenge to the ALJ's RFC assessment. The ALJ summarized the statements and testimony provided by Ms. Heikell's husband, Christopher Heikell, and discounted them because they were not consistent with Ms. Heikell's presentation upon examination or her ability to participate in activities, and failed to acknowledge Ms. Heikell's use of marijuana several times per day, herbal supplements, and birth control. Tr. 30-31 (referencing Tr. 66-72, 198-205). Ms. Heikell only challenges the ALJ's reliance on activities as a basis for discounting Mr. Heikell's statement (Dkt. 11 at 17), but the ALJ's other reasons are germane and sufficient. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons for discounting lay testimony included inconsistency with medical evidence and claimant's reports). Thus, Ms. Heikell has failed to establish error in the ALJ's assessment of Mr. Heikell's statements.

Ms. Heikell goes on to challenge the ALJ's findings related to her social functioning, arguing that because the ALJ himself found that Plaintiff had marked social limitations (Tr. 19), the ALJ erred in finding that she could have occasional contact with supervisors and co-workers (Tr. 20). This argument erroneously conflates the "paragraph B" criteria with an RFC finding: an ALJ's rating as to the severity of social limitations, *inter alia*, at step three does not amount to an RFC finding. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *4 (Jul. 2, 1996). In fact, the ALJ's decision itself notes the distinction between the findings at step three and the subsequent RFC assessment. Tr. 19-20. Accordingly, Ms. Heikell has failed to identify an

erroneous inconsistency with regard to the ALJ's findings related to social functioning.

Finally, Ms. Heikell challenges the ALJ's finding that she would be off-task 7% of a workday and absent once every three months. She argues that these findings are arbitrary and not supported by any particular evidence in the record. Dkt. 11 at 17. Even assuming this is the case, any error would be harmless. Ms. Heikell admits that the ALJ did not need to include these limitations in the RFC assessment. Dkt. 18 at 6 ("The ALJ was not required to quantify this finding in this manner. Indeed, this ALJ is unique in venturing this limitation, where few if any other ALJs do."). This admission demonstrates that any error in the ALJ's finding is harmless, because if it is not necessary to the RFC assessment, then it could not possibly have affected the ultimate disability determination. That the ALJ found Ms. Heikell to be more limited than the evidence shows her to be is not prejudicial to her. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995).

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **November 18,2015.** If no objections are filed, the Clerk shall note the matter for November 20, 2015as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.

/

/

1    Objections and responses shall not exceed ten pages.  The failure to timely object may
2 affect the right to appeal.
3    DATED this 4th day of November, 2015.

    _____
    BRIAN A. TSUCHIDA
    United States Magistrate Judge

REPORT AND RECOMMENDATION - 10